**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **OSIEL MORALES,** | : | |
| **Petitioner** | : | **CIVIL ACTION NO. 3:26-1637** |
| **v.** | : | **(JUDGE MANNION)** |
| **JESSICA SAGE,** | : | |
| **Respondent** | : | |

**MEMORANDUM**

Pending before the court is petitioner Osiel Morales' petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. (**Doc. 1**). For the reasons stated herein, Morales' petition will be **DENIED WITHOUT PREJUDICE**.

## I. BACKGROUND

Petitioner Osiel Morales is a citizen of Cuba. (Doc. 6-2). He entered the United States as a minor on December 4, 2010, at Miami, Florida. *Id.* Since arriving in the United States, Morales has accumulated a lengthy criminal history. He has been convicted of burglary, four times of criminal trespass, and twice of unlawful taking. *Id.* He also has pending charges for shoplifting, burglary, possession of a weapon for unlawful purpose, and possession with intent to use drug paraphernalia. *Id.*

On March 17, 2025, Immigration and Customs Enforcement ("ICE") officers encountered Morales at the Hudson County Correctional Facility in

New Jersey. *Id.* That same day, a Notice to Appear was issued, charging him as an alien not in possession of proper documentation, under §212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). (Doc. 6-4 at 5).

While in detention, an immigration judge ordered Morales removed to Cuba or a third-party country on September 10, 2025. (Doc. 6-5). Morales waived his right to appeal the order. *Id.* Later, on January 14, 2026, ICE issued a notice of removal, informing Morales of its intention to remove him to Mexico, which he signed. (Doc. 6-6). Following this notice, the Department of Homeland Security ("DHS") issued a warrant of removal for Morales to Mexico. (Doc. 6-3). On March 27, 2026, with his removal flight imminent, Morales was denied repatriation to Mexico. (Doc. 9-1, ¶30). Two months later, on May 29, 2026, with Mexico having changed its decision regarding Morales, he was escorted to the Mexico port of entry, but refused to depart the bus and proceed with his removal. *Id.*, ¶34. As a result, he was placed into failure to comply status. *Id.*, ¶37. He remains in detention, and currently resides at FCI Lewisburg in Lewisburg, Pennsylvania.

On June 15, 2026, Morales filed the present petition for habeas corpus, arguing that his detention has become illegally prolonged and that it does not appear that his removal will occur in the reasonably foreseeable future.

(Doc. 1). On July 8, 2026, Respondent filed her response to the petition. (Doc. 6). On July 21, 2026, Morales filed a reply to her response. (Doc. 7). On July 31, 2026, the court ordered Respondent to file a supplemental response. (Doc. 8). Finally, on August 14, 2026, Respondent filed her supplemental response. (Doc. 9). Thus, the petition is now ripe for disposition.

## II. LEGAL STANDARD

Under 28 U.S.C. §2241, district courts have the authority to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(1), (3).

Furthermore, "[i]t is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody." *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972). However, "[w]ith respect to certain factual issues, the burden of proof may be shifted to the state because of specific policy considerations or because the available evidence is likely to be in the hands of the state." *Id.*

## III. DISCUSSION

### a. Jurisdiction

The court's authority to hear noncitizen habeas petitions under 28 U.S.C. §2241 is limited in some circumstances by 8 U.S.C. §§1252(g), (b)(9), and (a)(2)(B)(ii).

§1252(g) states "[e]xcept as provided in this section and notwithstanding any other provisions of law . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. §1252(g). Here, the court's jurisdiction is not barred by §1252(g) as the petition does not challenge the commencement of removal proceedings, the Attorney General's decision to adjudicate, nor the execution of a removal order. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (finding that §1252(g)(2) divests the court of jurisdiction "only to [these] three discrete actions").

§1252(b)(9) states "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceedings brought to remove an alien from the United States . . . shall be available only on judicial review of a final order [of removal]." 8 U.S.C. §1252(b)(9). Here, the court's jurisdiction is not barred

by §1252(b)(9) as the petition does not seek review of any law or fact arising from a removal proceeding. *See E.O.H.C. v. Sec'y United States Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (finding that §1252(b)(9) "does not reach claims that are independent of, or wholly collateral to, the removal process").

§1252(a)(2)(B)(ii) prohibits district courts from reviewing discretionary detention choices of the Attorney General or Secretary of Homeland Security. 8 U.S.C. §1252(a)(2)(B)(ii). Here, the court's jurisdiction is not barred by §1252(a)(2)(B)(ii) as the petition does not challenge a discretionary detention choice. *See Patel v. O'Neil*, 2025 WL 3516865, at *3 (M.D.Pa. Dec. 8, 2025) ("section 1252(a)(2)(B)(ii) is inapposite because the Respondents' 'statutory detention power is "not a matter of discretion" to which §1252(a)(2)(B)(ii) applies'") (internal citations omitted).

Finally, courts considering the issue of whether a petitioner is being wrongfully detained without a bond hearing "have almost universally held that they have jurisdiction," and, therefore, that §§1252(g), (b)(9), and (a)(2)(B)(ii) do not apply. *Patel*, 2025 WL 3516865 at *3.

**b. Exhaustion of administrative remedies**

"A petitioner challenging agency action must generally first exhaust administrative remedies; however, in habeas proceedings, 'exhaustion

exists as a judicially created doctrine applied at the Court's discretion.'" *Vadel v. Lowe*, 2025 WL 3772059, at *3 (M.D.Pa. Dec. 31, 2025) (quoting *Kashranov v. Jamison*, 2025 WL 3188399, at *3 (E.D.Pa. Nov. 14, 2025)). Here, further administrative review would be pointless, as Morales is detained under 8 U.S.C. §1231, which precludes immigration judges from holding a bond hearing. *See Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022) (holding that the Government is not required to offer bond hearings after six months of detention to noncitizens held beyond the 90-day removal period set by §1231).

**c. Merits**

Morales argues that his detention has become unlawfully prolonged and that he, therefore, should be released from custody. The court disagrees.

Where an immigration detainee has been given a final order of removal, his detention is governed by 8 U.S.C. §1231. Under the statute, the Government "shall remove the alien from the United States within a period of 90 days." 8 U.S.C. §1231(a)(1)(A). This ninety day "removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final[;] (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final

order[;] (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. §1231(a)(1)(B).

In *Zadvydas v. Davis*, the Supreme Court held that the Government may not detain aliens indefinitely following a final order of removal. 533 U.S. 678, 689 (2001). Indeed, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. However, the court noted that it "doubt[ed] that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time." *Id.* at 701. Accordingly, the court reasoned that detention for up to 6 months following a final order of removal is "presumptively reasonable." *Id.*

"After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Further, "for detention to remain reasonable, as the period of prior postremoval grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

However, where a detainee fails to cooperate with removal efforts, courts exclude the uncooperative time when considering whether detention

is prolonged. *Francis S.M. v. Decker*, 2020 WL 1956053, at *4 (D.N.J. Apr. 23, 2020) ("Crucially, an alien cannot meet the initial burden if he or she has failed to cooperate with removal efforts . . . The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock" (quoting *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003)); *see also Xiangquan v. Holder*, 2013 WL 1750145, at *3 (D.N.J. Apr. 23, 2013) ("an alien who, during his/her presumptive *Zadvydas* based period takes actions delaying his/her removal (e.g., by refusing to cooperate with ICE's removal efforts), cannot demand his/her release upon expiration of these six months . . . Rather, the period affected by the alien's obstructive actions is excluded from the presumptive period articulated in *Zadvydas*, thus causing a quasi-tolling mimicking, in its operation") (internal citations omitted); *see also Qasemi v. Kurzdorfer*, 2025 WL 2938607 (W.D.N.Y. Oct. 16, 2025) (finding that relief should not be afforded where the petitioner's "own noncooperation caused his initial period of detention to be wasted").

Here, Morales' order of removal became final on September 10, 2025, when he waived his right to appeal. (Doc. 6-5); 8 C.F.R. §1241.1(b) ("An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final: (b) Upon waiver

of appeal by the respondent"). Thus, the presumptively reasonable period of detention expired on March 11, 2026, six months and one day after the order became final.

However, when the Government first tried to remove Morales to Mexico, on March 31, 2026, he was denied repatriation. (Doc. 9-1, ¶30). When the Government again attempted to remove him on May 29, 2026, he, by his own admission, refused to get off the bus. (Doc. 9-1, ¶34); (Doc. 7 at 4, ¶19). These attempts by the Government were thwarted by factors—Mexico's initial denial of repatriation and Morales' refusal to cooperate—outside its control. Indeed, Morales' "own noncooperation caused his initial period of detention to be wasted." *Qasemi v. Kurzdorfer*, 2025 WL 2938607 at *4. Considering that less than three months have transpired since Morales wasted the Government's previous eight months of efforts to remove him, his continued detention remains presumptively reasonable while they continue to make efforts to find him another third-party country of removal other than Mexico. (Doc. 9-1, ¶38) ("ICE is actively working to locate a safe third [party country] of removal").

Thus, Morales' detention under §1231 has not become unconstitutionally prolonged, as although more than six months have passed since his order of removal became final, the Government has made efforts

to remove him and credibly claims that it is continuing to make such efforts and that removal is "significantly likely in the reasonably foreseeable future." *Id.* The court notes, however, that Morales may file subsequent habeas petitions if it turns out that his detention does, in fact, become unreasonably prolonged.

## IV. CONCLUSION

For the foregoing reasons, Morales' petition for a writ of habeas corpus under 28 U.S.C. §2241 will be **DENIED WITHOUT PREJUDICE**. An appropriate order shall issue.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 8/18/26
26-1637-01